FRANK C. BOLT, APPELLANT, *v.* MARY KEYHOE, RESPONDENT.

30   619
83   463
30b 619
a56ad346
30   619
41ap292
30h     619
171 NY ¹322

*Benevolent societies — the relief funds are liable for the debts of the beneficiaries after such funds have been received by the latter —* 1879, chap. 189 — 1877, chap. 73.

Chapter 189 of 1879, incorporating a society for the improvement of the moral, mental and social condition of its members, and to aid and support them and their families in cases of want, sickness or death, provided that a fund be set apart to be paid over to the family, heirs or legal representatives of disabled or deceased members, or to such person or persons as might be named by such deceased members in their lifetime, and directed that such funds shall be exempt "from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process to pay any debt or liability of such deceased member." In pursuance of directions given by the defendant's husband, a member of the society, the fund which he was entitled to receive was, upon his death, paid to the defendant for her own absolute use. She loaned the same to one Flagler and took from him his promissory note for the amount thereof.

*Held,* that the fund, after being received by her, was not exempt from the claims of her creditors.

That she should be compelled to transfer and deliver the said note to a receiver appointed in proceedings supplementary to an execution issued upon a judgment recovered against her.

APPEAL from an order, made by the county judge of Niagara county, denying a motion to punish the defendant for a contempt.

In proceedings supplemental to execution, pending before the county judge of Niagara county, an order was made, denying the plaintiff's application, to punish the defendant as for a contempt, in not delivering assets in her hands, to the receiver, in pursuance of the requirements of a previous order.

The defendant is the widow of James Keyhoe, who died leaving her and two children him surviving.

*E. C. Hark*, for the appellant.

*Ellsworth & Potter*, for the respondent.

BARKER, J.:

The plaintiff recovered a personal judgment against the defendant, the amount of which, and the time when the same was recovered, is not set forth in the papers.

Upon such judgment an execution against the defendant's property was duly issued and returned unsatisfied, and thereupon proceedings supplementary to execution were instituted, which resulted in the appointment of a receiver of the property and effects of the judgment debtor. At the time of the appointment of the receiver, the defendant was the owner of a promissory note made by one Flagler, and payable to herself, dated September 5, 1881, for the sum of $3,700. The receiver demanded of the defendant a delivery of the note to him, as receiver, which she refused to do, for the reason that it was exempt from liability for the payment of her debts. The facts upon which such exemption is based are these: James Keyhoe, her late husband, in his lifetime, was a member of "The Grand Lodge of the Empire Order of Mutual Aid of the State of New York," and also of "The Grand Lodge of United Workmen of the State of New York." Upon his death, which occurred in May, 1881, the first of the above mentioned societies paid over to the defendant $2,000, the other the sum of $1,700, in pursuance of the constitution and by-laws of said societies. These sums were loaned by the defendant to the maker of the note, and constitute the sole and only consideration therefor.

These corporations are organized under the enabling acts (chap. 189, Laws of 1879; chap. 74, Laws of 1877), the provisions of which are precisely the same, so far as they relate to the question presented on this appeal. We shall therefore only refer to and quote from the act of 1879. The corporation thus created is beneficent in its aims and character, and the act declares its purpose to be: To improve the moral, mental and social condition of its members, to prevent strikes among all classes; to aid, assist and support members and their families in case of want, sickness or death. The corporation is authorized to create, hold, manage and disburse a beneficiary fund, sufficient to pay all loss and expenses incident to its management, and for the relief of the members of the same and their families. This fund is to be set apart, to be paid over to the family, heirs or legal representatives of disabled or deceased members, or to such person or persons as may be named by such deceased member, in his lifetime, and such funds so provided and paid over shall be exempt as the statute declares, "from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any debt or liability of such deceased member." By other provisions of the act the collecting, managing and disbursement of the beneficiary fund as well as the person or persons to whom, and the manner and time in which the same shall be paid on the death of a member, is to be regulated and controlled by the rules and by-laws of the society.

It is set up by the defendant in her affidavit, and not disputed by the plaintiff, that her husband in his lifetime directed that so much of the beneficiary fund as should be payable upon his death, should be paid to her in her own right, in pursuance of the rules and by-laws of the corporation.

I am of the opinion that the note held and owned by the defendant should be appropriated to the payment of the plaintiff's judgment. It is certain that upon payment of the money to the defendant the same became her absolute property. There is no provision in the act exempting the funds from the payment of the debts of the person who should be entitled to the same, as provided by the charter and by-laws of the corporation, nor is there any declaration of an intent on the part of the legislature to

secure such an end. It is the general policy of the law, that all the debtor's property shall be liable for the payment of his debts. If there be any exception in favor of a class of debtors, it must be found in some legislative enactment. The fund intended to be created by the statute is to be paid over to the family of the deceased member of the society, or to his heirs or representatives, or to such person or persons as he in his lifetime may nominate. A member with the consent of the society, may cause the fund which is to be distributed at his death, to be paid to an entire stranger, depriving his wife and children, if he should have any, of all participation in the same. It is under this provision of the act that the defendant secured absolute title to the money in her own individual right.

If the deceased had not made the defendant his appointee, to whom the money should be paid, and had died without making any appointment whatever, then her interest in the fund would have been much less than it now is, for the reason that without the direction which her husband did make, her children would have had an interest in the fund and the legal right to share in its use and enjoyment.

As the statute is beneficent in its character, all its provisions should be so construed as to effectuate the legislative intention. I am unable to discover any provision which can be made to bear the construction that it was the aim and purpose of the legislature, to exempt the funds in the hands of the donee, from the payment of her debts.

The provision exempting the fund from the payment of the debts of the deceased member is clear and positive. It is fair to presume, if the legislature intended to preserve the fund from liability to pay the debts of the beneficiaries, the act would have contained a clear and unqualified expression of the purpose. But there is an entire absence of any provision or declaration of intent, that the fund should be exempt from the debts of the person who shall become the absolute owner.

The cases cited by the learned counsel for the respondent do not support his argument, nor justify the interpretation sought to be placed upon the statute. In *Eadie* v. *Slimmon* (26 N. Y., 9) it was held that a policy of insurance issued to a married woman,

under the act of 1840, for her benefit and that of her children, in case of her death before her husband, could not be transferred by her during the lifetime of her husband, whose life was insured so as to divest her interest or that of her children, the court holding that it was the intent of the statute to make the policies, issued under and in pursuance of the provisions of the act, a security to the family of a married man, and a provision for their use and benefit; that the intent of the statute would be defeated if such policies were held to be assignable by the wife, like ordinary *choses in action* belonging to her, in her own right as her separate property; that as the contract was executory in its character, that circumstance distinguished the case from an ordinary *chose in action*, belonging to a married woman as her separate estate; that the provisions of the law were special and peculiar, and were enacted for the purpose of making a contract of that character valid, which, without the sanction of the act, would have been invalid and ineffective and was intended as a benefit for a state of widowhood and for orphan children, and that it would defeat the policy of the statute to permit the wife to sell and traffic with a policy as though it were realized money, or an ordinary security for money.

In *Barry* v. *Equitable Life Assurance Company* (59 N. Y., 587) the plaintiff, in the lifetime of her husband, procured to be issued to herself a policy of life insurance upon the life of her husband for her sole use, if she was living at the time of his death, and if not then living for the benefit of her children. In the lifetime of her husband the plaintiff assigned the policy as a collateral security for the payment of a debt due, the assignee from her husband. It was held, following the case of *Eadie* v. *Slimmon* (*supra*), that the policy was not assignable during the lifetime of her husband; that she could not sell or traffic with it as though it was realized personal property or an ordinary security for money; that the contract for insurance would be unlawful, except for the provisions of the act of 1840, and the acts amendatory thereof; and that it was the intent of those acts to secure the money for the benefit of the family after the decease of the person whose life was insured.

The case of *Smillie* v. *Quinn* (25 Hun, 332) is but another announcement of the same proposition, decided in the cases already cited. In the latter case Mrs. Tetens procured a policy of insurance

to be issued upon the life of her husband, payable to herself, if she survived him, and to his children in case she should die first. During the life of her husband she assigned the policy to a third person in trust for the benefit of the children, of herself and her husband. Her husband thereafter died, leaving his wife surviving and a personal judgment outstanding against her, recovered for a debt contracted in her separate business. The dispute arose between the trustee for the children and the creditors of Mrs. Tetens, as to the title of the money due by the terms of the policy, and it was held that at the time Mrs. Tetens made the assignment to the trustee for the benefit of her children, her creditors had no personal interest in the policy, nor any claim or lien upon it, either in law or equity, which they could enforce. As she was under no moral or legal obligation to keep possession of her ownership of or interest in the policy for their benefit, until upon the possible death of her husband, prior to her own, when her interest in the policy might ripen into a possession in her own right of the money which would then become payable upon it, her interest in the policy during the lifetime of her husband was contingent, and in disposing of it for the benefit of her children, nothing passed upon which her creditors had any just claim.

This case was affirmed in the Court of Appeals, and is reported in 90 New York, 492. It was there ruled that the assignment made by Mrs. Tetens, was not fraudulent as to her judgment creditors, for prior to the death of her husband she had no interest in the policy which her creditors could seize. If it should be held that she had such an interest, the policy of the law could be thwarted in every case by the action of creditors; that she was not bound to keep the policy of insurance in life for the benefit of her creditors, and she could at her own option allow it to lapse; and that it was no fraud upon her creditors to make the assignment in the lifetime of her husband before the moneys were realized for the benefit of her children.

These cases simply decide, that a policy of insurance issued to a wife upon the life of her husband, is not assignable while he is living, and that her interest in the contract is not such that the same can be seized by her creditors while the contract remains executory. They do not reach nor discuss the question whether moneys actually

realized on contracts of insurance, after the death of the husband, can be reached by her creditors. As the county judge disposed of the application upon the ground that the note could not be used and appropriated to pay the debt of the judgment debtor and for that reason her refusal was justified, the order should be reversed.

The order which we make is, that the order appealed from be reversed and the proceedings remitted to the county judge of Niagara county, with directions to proceed on the application made by the plaintiff to punish the defendant, with ten dollars costs of this appeal.

Present — HARDIN, P. J., BARKER and DWIGHT, JJ.

Order reversed, with ten dollars costs and disbursements and proceedings remitted to the county judge of Niagara county, with. directions to proceed on notice.